## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSE S. LOPEZ III, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| SHERIFF JAVIER SALAZAR, | § | CIVIL ACTION NO: |
| DEPUTY JOHN DOE 1, | § | |
| DEPUTY JOHN DOE 2, | § | Hon. |
| DEPUTY JOHN DOE 3, | § | |
| DEPUTY JOHN DOE 4, | § | |
| DEPUTY JOHN DOE 5, | § | |
| and BEXAR COUNTY | § | |
| *Defendants* | § | |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

NOW COMES Plaintiff **JESSE S. LOPEZ III**, by and through his attorney, Brandon J. Grable of Grable Grimshaw PLLC, complaining of Defendants and respectfully alleges as follows:

### <u>INTRODUCTION</u>

1.      Jesse S. Lopez III ("Plaintiff"), a lawful citizen, brings this civil action for damages against Sheriff Javier Salazar, Deputy John Does 1-5, and Bexar County, Texas. Plaintiff suffered several constitutional violations at the hands of Deputy John Does 1-5 during an overnight stay at the Bexar County jail for non-violent moving violations while awaiting arraignment.  While in the care, custody, and control of Defendants as a pretrial detainee, Plaintiff, in the process of following orders given to him by Deputy John Doe 1, was attacked and suffered physical violence at the hands and feet of Deputy John Doe 1, Deputy John Doe 2, Deputy John Doe 3, Deputy John Doe 4, and Deputy John Doe 5.  Plaintiff sustained head injuries and made requests to Defendant Deputies for medical treatment which was denied.  Defendant Deputies acted pursuant to policies, practices, and customs of Defendant Sheriff Javier Salazar and Defendant Bexar County.  Plaintiff

then filed a complaint with Defendant Sheriff's Office, but that complaint was ignored which further ratified the patterns and practices of abusing pretrial detainees under the control of Defendant Sheriff's Office.

2.      The use of excessive force and cruel and unusual punishment against Plaintiff while denying him equal protection under the law, due process, and medical treatment clearly violates Plaintiff's rights afforded to him under the United States Constitution.  Plaintiff filed a formal complaint with Sheriff Salazar, but the complaint was never properly investigated or ignored. Sheriff Salazar and Bexar County either have a policy, practice, or custom of treating pretrial detainees with unnecessary harm, or these defendants act with deliberate indifference.  These defendants violated their duty to train and supervise Bexar County sheriff deputies and have failed miserably and protecting the basic human rights of pretrial detainees.  Ostensibly, Plaintiff was harmed and seeks monetary and non-monetary relief in this lawsuit.

## JURISDICTION AND VENUE

3.      This is a civil rights action in which the Plaintiff seeks relief for the violations of his rights secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments.

4.      Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

5.      Venue is properly laid in the Western District of Texas under 28 U.S.C. § 1391(b)(2).

6.      The events that gave rise to this lawsuit took place at the Bexar County jail located in San Antonio, Texas, in the county of Bexar.

## PARTIES

7.      Plaintiff **JESSE S. LOPEZ III** ("Plaintiff") is a law-abiding citizen of the United States and a resident of the City of San Antonio, County of Bexar, State of Texas.

8.    Defendant Sheriff **JAVIER SALAZAR** ("Defendant Sheriff") is the head law enforcement officer and policy maker for the Bexar County Sheriff's Office.  Defendant is responsible for the policies, practices, and procedures of its Sheriff's Office and individual deputies.

9.    Defendant **BEXAR COUNTY** ("Defendant County") is a political subdivision of the State of Texas, acting under color of state law, and is a person for the purposes of a 42 U.S.C. 1983 action. Defendant is responsible for the policies, practices, and procedures of its Sheriff's Office and individual deputies.

10.    Defendant **DEPUTY JOHN DOE 1** ("Defendant Deputy 1") was at all pertinent times a deputy officer employed by Bexar County and was at all pertinent times acting under color of state law in performance of his duties as a Bexar County deputy.

11.    Defendant **DEPUTY JOHN DOE 2** ("Defendant Deputy 2") was at all pertinent times a deputy officer employed by Bexar County and was at all pertinent times acting under color of state law in performance of his duties as a Bexar County deputy.

12.    Defendant **DEPUTY JOHN DOE 3** ("Defendant Deputy 3") was at all pertinent times a deputy officer employed by Bexar County and was at all pertinent times acting under color of state law in performance of his duties as a Bexar County deputy.

13.    Defendant **DEPUTY JOHN DOE 4** ("Defendant Deputy 4") was at all pertinent times a deputy officer employed by Bexar County and was at all pertinent times acting under color of state law in performance of his duties as a Bexar County deputy.

14.    Defendant **DEPUTY JOHN DOE 5** ("Defendant Deputy 5") was at all pertinent times a deputy officer employed by Bexar County and was at all pertinent times acting under color of state law in performance of his duties as a Bexar County deputy.

15.     Each and all the acts of Defendant Deputies alleged herein were committed by said Deputies while acting within the scope of their employment with the Defendant County's Sheriff's office.

16.     Each and all of the acts of Defendant Deputies were committed by these Deputies despite their knowledge that they were engaging in unlawful and unconstitutional acts, and yet they did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## STATEMENT OF FACTS

17.     This action involves incidents that occurred during the morning of October 26, 2021, through the morning of October 27, 2021, which are addressed herein chronologically.

18.     On October 26, 2021, at about 11:00 AM CST, Plaintiff was driving westbound on IH-10 toward Wurzbach Parkway. His fiancée was in the vehicle with him. Plaintiff was pulled over for driving with a hand-held mobile communication device by San Antonio Police ("SAPD") Officer P. Navarijo, Badge #3477.

19.      Officer Navarijo informed Plaintiff that he would receive a warning for holding a hand-held mobile communication device while driving. In addition to this warning, Officer Navarijo informed Plaintiff that he would be cited for driving without a valid driver's license due to unpaid traffic tickets. The officer informed Plaintiff that he could pay the full amount of the tickets right then, or he could go with the officer downtown and talk to the magistrate about it. Concerned about the validity of that demand, Plaintiff agreed to go with SAPD Officer Navarijo downtown.

20.    Plaintiff was placed under arrest and transferred to the care, custody and control of SAPD officer E. Moctezuma, Badge #531, who had arrived on scene. While sitting Officer Moctezuma's vehicle, Plaintiff was informed that Officer Navarijo would reduce both citations to warnings.

21.    Plaintiff registered to be seen by the magistrate at about 12:18PM CST. At about 3:30PM CST, Plaintiff was brought, via Zoom, before Magistrate Judge Lisa M. Gonzalez, along with a large number of other individuals. Judge Gonzalez gave Plaintiff credit for time served for the time he had already been in custody to cover one of his unpaid tickets; she reset the court dates for the remaining two tickets. Judge Gonzalez also told Plaintiff that she would enhance the charge for driving with an invalid license to a Class B Misdemeanor because he was allegedly holding a phone in his hand. She placed a bond for $1,000.00 for his release and remanded him to the custody of the Bexar County Sheriff's Office to be detained at the Bexar County Adult Detention Center until he made bail.

22.    At about 4:30 PM CST, Plaintiff arrived at the Bexar County jail. Once there, he was informed by Defendant Sheriff's deputies that he would be brought before another magistrate. He was brought before a magistrate at the jail at about 8:00 PM CST. That magistrate re-set his bond at $100.00 at about 8:30 PM CST. Accordingly, Plaintiff's fiancée paid his bond at 9:20 PM CST. Despite this timely payment of his jail bond, Plaintiff was held in Defendant County's jail overnight.

23.    Shortly before midnight, Defendant County's deputies changed shifts at the prison. An announcement came over the speaker system. Due to the acoustics in the prison, the announcement echoed, distorting the sound so that Plaintiff could not hear the announcement made. The prison was cold, and Plaintiff had been pacing to try stay warm in the leg irons

Defendant County's deputies required him to wear.

24.     While Plaintiff was pacing, Deputy John Doe 1 ("Defendant Deputy 1") came up behind Plaintiff and yelled at him that he was ordered to sit down. Plaintiff immediately apologized and explained that he was pacing to stay warm.  When Plaintiff asked if there was someplace else that he could pace around, Defendant Deputy 1 yelled at him to lay down on the ground.

25.     Plaintiff fully complied with Defendant Deputy 1's order and laid down with his back on the ground and his hands on his stomach.

26.     In the dim light of the jail, Plaintiff soon noticed Deputy John Doe 2 ("Defendant Deputy 2"), Deputy John Doe 3 ("Defendant Deputy 3"), and Deputy John Doe 4 ("Defendant Deputy 4") joining Defendant Deputy 1 by standing next to Plaintiff's defenseless body.

27.     Plaintiff felt a light tap followed by a hard tap from a hard object against his head. Realizing that Defendants Deputy 1, Deputy 2, Deputy 3, and Deputy 4 were brutally kicking him on the head, Plaintiff begged in pain for them to stop.  They did not.

28.     Defendants Deputy 1, Deputy 2, Deputy 3, and Deputy 4 then forcibly turned Plaintiff onto his stomach and handcuffed his wrists.  Defendants Deputy 1, Deputy 2, Deputy 3, and Deputy 4 then demanded Plaintiff to stand while using a pain compliance technique on his left hand that prevented Plaintiff from complying with the Defendants' order despite his willingness to do so.

29.     Despite Plaintiff's continued willingness to abide by the Defendants' orders, Defendants Deputy 1, Deputy 2, Deputy 3, and Deputy 4 dragged Plaintiff to a cell.  Once near his cell, Defendants intentionally and unreasonably threw Plaintiff to the cold concrete ground in front of the cell he was staying in.  Once the door to the cell was open, Defendants Deputy 1, Deputy 2, Deputy 3, and Deputy 4 picked Plaintiff up and threw him again, but this time, caused Plaintiff to

hit the concrete floor head-first.

30.     Plaintiff immediately recognized that he was suffering from injuries to his head, left hand, and legs.

31.     Plaintiff repeatedly requested Defendants Deputy 1, Deputy 2, Deputy 3, Deputy 4, Deputy John Doe 5 ("Defendant Deputy 5") and Defendant County's various deputies loosen the leg irons and provide medical treatment for his injuries.

32.     Defendant John Doe 1-5s' intentional and knowing conduct was not unique to Plaintiff, but taken in accordance with a practice, custom or policy proscribed and rendered by Defendant Sheriff and Defendant County.

33.     Plaintiff was not provided medical treatment for his injuries and the leg irons on Plaintiff's legs continued to scold into his left and right ankle.[1]

34.     Sometime during the night, Defendant County's deputies placed another detainee in Plaintiff's cell for a couple of hours.  The detainee was clearly suffering from either a severe illness or a drug-related condition, causing Plaintiff to fear that he may have been exposed to Covid-19.  Plaintiff feared not only for himself, but also, once he was released, for his family including his minor daughter who was too young to receive the Covid-19 vaccine.

35.     Plaintiff's fiancée called several times throughout the evening. Defendant County's detention center would only tell her that the processing of Plaintiff's paperwork and release could take several hours. During some of her calls she was told up to 14 hours, but at no time was she informed about the incidents involving Plaintiff.

36.     When Plaintiff was eventually released from the cell and confined to back to the

---

[1] At one point throughout the night a Caucasian deputy, Defendant Deputy 5, came into Plaintiff's cell, looked him in the eyes, and, as Plaintiff begged for help, told him twice, "I don't speak English."

common area the following morning, he was finally able to call his fiancée to tell her what had happened. Plaintiff's fiancé called the detention center back and asked, again, how much longer it would be before Plaintiff would be released on bail; she also informed them that she had been made aware of the incident with the officers.

37.     Shortly after this, Defendant County's deputies began to process Plaintiff's release from the Bexar County jail. During this time, including while he was being fingerprinted, Defendant County's deputies harassed Plaintiff with insulting comments.[2]

38.     Plaintiff was finally released on October 27, 2021, at about 10:30 AM.

39.     To this day Plaintiff still suffers from the injuries he received at the hands and policies of Defendants, including scrapes and bruises on his wrists and ankles; a fracture of his left pinky that resulted in a displaced bone fragment; a concussion; a scar on his forehead; and significant memory problems.  Fortunately, Plaintiff tested negative for Covid-19 upon his release.

40.     Following his unlawful treatment by Defendant John Does 1-5, Defendant Sheriff, and Defendant County, Plaintiff attempted several times to obtain records and videos regarding the events and occurrence in question that form the basis of Plaintiff's lawsuit.  Defendants declined to provide substantive information and seemed to suggest no relevant records existed.

41.     Given the recent history of complaints and investigations of detainee abuse within the Bexar County jail, Defendant Sheriff and Defendant County are aware of the unconstitutional conduct of its deputies but refuse to do anything to remedy it.  Plaintiff's harm was entirely foreseeable and preventable.  However, due to Defendant Sheriff's and Defendant County's deliberate indifference or ratification of unconstitutional practices, policies, and custom, Plaintiff's rights were violated, and he was harmed.

---

[2] These comments ranged from calling Plaintiff an "a\*\*hole for being arrested" to more derogatory insults.

42.     Additionally, Defendant Sheriff and Defendant County are well aware of the abysmal working conditions for Defendant Deputies in the Bexar County Adult Detention Center.[3] Deputies have reported working 16-hour days back-to-back-to-back with four hours of rest in between as a result of Defendant Sheriff's policies concerning Mandatory Overtime (MOT), Forced Mandatory Overtime (FMOT), and Forced No Relief (FNR).[4] Constant hiring and training of new deputies for the Detainment Center cannot keep up with the number of deputies quitting to cover staffing shortages.[5] These shortages place both Defendant Officers and inmates like Plaintiff in a very dangerous situation.[6]

43.     Prior to filing this lawsuit, Plaintiff filed a formal complaint with Defendant Sheriff.  When Plaintiff did not hear anything, he followed up.  Defendant Sheriff eventually assigned Bexar County deputy sergeant Robert Johnson to investigate Plaintiff's complaints. Despite appearing that he was taking the complaint seriously, Sergeant Johnson never interviewed Plaintiff, followed up, or provided updates; and he did not appear to investigate Plaintiff's complaint.  If he did complete an investigation, he never relayed this information to Plaintiff.  This appears to be another example of Defendant Sheriff and Defendant County demonstrating deliberate indifference or ratification of unconstitutional conduct of Bexar County sheriff deputies and their treatment toward pretrial detainees.

44.     Having no other recourse available, Plaintiff now files this lawsuit and asserts the following violations of his constitutional rights.

---

[3] Exhibit 1.
[4] Exhibit 2.
[5] Exhibit 3; Exhibit 4.
[6] Exhibit 5; Exhibit 6.

## COUNT I
## FOURTH AMENDMENT AND 42 U.S.C. § 1983
### (Violation of Fourth Amendment Right to be Free from Excessive Force)

45.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

46.    At all times relevant herein, Plaintiff was being held in custody by Defendant Sheriff and Defendant County as a pretrial detainee.

47.    At all times relevant herein, Defendants were acting under the color of State law.

48.    Defendant Deputies (John Doe 1-5), while acting within the scope of their employment with Defendant County's Sheriff's office, and under the color of law, ordered Plaintiff on the ground in order to handcuff him for no lawful reason.

49.    Defendants were following the policies, practices, and custom of Defendant Sheriff and Defendant County.

50.    Despite Plaintiff following the Defendants' orders without any attempt to resist, Defendants John Doe 1-5 violated Plaintiff's right to be free from excessive force when Defendants forcefully and intentionally swung, and successfully connected, their feet with Plaintiff's head.  The numerous blows to Plaintiff's head and body were objectively unreasonable and unnecessary.

51.    Defendants John Doe 1-5 further violated Plaintiff's right to be free from excessive force when Defendants unnecessarily and unreasonably dragged Plaintiff to his cell and threw Plaintiff headfirst onto the concrete floor.

52.    At no time did Plaintiff resist, obstruct, or retaliate against the Defendants.

53.    Defendants John Doe 1-5 intentionally committed acts that violated Plaintiff's constitutional rights to be free from excessive or objectively unreasonable force while being held

in custody as a pretrial detainee.

54.     Defendants John Doe 1-5s' conduct caused Plaintiff's injuries.

**COUNT II**
**FOURTH AMENDMENT AND 42 U.S.C. § 1983**
**(Violation of Fourth Amendment Right to be free from Unlawful Detention/False**
**Arrest)**

55.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

56.     Defendants John Doe 1-5s, at all relevant times, acted under the color of law and pursuant to Defendant Sheriff's and Defendant County's practices, policies, and custom.

57.     Defendants John Doe 1-5s willfully detained or arrested Plaintiff by placing him in handcuffs and then physically exerted force over him with pain compliance techniques.

58.     Defendants John Doe 1-5 knew that they were without lawful authority to detain Plaintiff as he was not violating any law, committing any crime, or violating in any manner jail regulations.

59.     Defendants John Does 1-5 did not have reasonable suspicion or probable cause to detain or arrest Plaintiff.  No reasonable officer could have believed there existed reasonable suspicion or probable cause to detain or arrest Plaintiff.

60.     Plaintiff was never charged with any crime related to this unlawful detainment or arrest.  Defendant John Does 1-5 did not prepare any arrest reports (or if they did, they did not produce them to Plaintiff).

61.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

<u>**COUNT III**</u>
<u>**FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983**</u>
<u>**(Violation of Fourteenth Amendment Right to Receive Medical Care)**</u>

62.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

63.    At all times relevant herein, Defendants were acting under the color of State law.

64.    The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to individuals injured in their custody.

65.    The Fourteenth Amendment also requires Defendant Sheriff and Defendant County to provide for basic human needs.

66.    Plaintiff, while a pretrial detainee in the custody of Defendant Sheriff and Defendant County, and was injured by Defendants John Doe 1-5.

67.    Defendants John Doe 1-5 knew that Plaintiff sustained head, hand, and leg injuries that required medical attention.

68.    Plaintiff repeatedly requested medical treatment for his injuries, but Defendants John Doe 1-5 refused or ignored his requests.

69.    Defendants John Doe 1-5 knowingly failed to provide or get necessary medical care for Plaintiff's serious medical need in deliberate indifference to the risk of serious harm.

70.    Plaintiff suffered injuries as a result of the Defendants John Doe 1-5s' unnecessary, excessive and brutal use of force.  Following Defendants John Doe 1-5's assault, Plaintiff requested medical treatment. Defendants refused to provide Plaintiff with medical care the entire time Plaintiff was in the care, custody, and control of Defendants.

71.    Defendant Sheriff and Defendant County failed to provide basic human needs to Plaintiff by subjecting him to intentional assault by sheriff deputies and then by declining to

provide any medical treatment.

72.    Plaintiff's resulting harm was a direct consequence of Defendants' failure to provide necessary and immediate medical care to Plaintiff.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Failure to Intervene)**

73.    Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

74.    At all times relevant herein, Defendants were acting under the color of State law.

75.    Defendants John Doe 1-5 observed excessive force and other constitutional violations being committed by their counterparts.

76.    Defendants had the opportunity and the means to prevent harm from occurring.

77.    Defendants stood by and let the harm unfold.

78.    The events did not unfold over a matter of moments, giving Defendants ample opportunity and time to intervene.

79.    At all times relevant, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

80.    At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use excessive force against Plaintiff and otherwise violate Plaintiff's constitutional and statutory rights.

81.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT V
### *MONELL* Liability

82.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

83.    A county is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the county's policies, practices, and customs.

84.    Defendant Sheriff, Defendant County's policymaker, ratified unconstitutional policies, practices, and customs that created an environment that condoned excessive force and other constitutional violations of Plaintiff and other pretrial detainees.

85.    Defendant Sheriff did not require the reporting or investigating of pretrial detainee assaults, arrests, or requests for medical treatment.

86.    Practices, policies, and custom applicable to the unlawful treatment of pretrial detainees by Defendant County is persistent and widespread so as to have the force of law.

87.    Defendant Sheriff and Defendant County directly caused the constitutional violations suffered by Plaintiff and is liable for the damages caused as a result of the conduct of Defendants John Doe 1-5. The conduct of the individual Defendant Deputies was a direct consequence of the policies and practices of Defendant Sheriff and Defendant County.

88.    At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant Sheriff and Defendant County, including the failure:

a.    To adequately supervise and train its deputies and agents, including individual Defendant Deputies, thereby failing to adequately discourage further constitutional violations on the part of its deputies;

14

b.      To properly and adequately monitor and discipline its deputies, including individual Defendants;

c.      To properly and adequately report a deputy's use of force against pretrial detainees;

d.      To properly and adequately report requests by pretrial detainees for medical care; and

e.      To adequately and properly investigate citizen complaints of deputy misconduct.

89.     Defendant Sheriff and Defendant County acted with deliberate indifference to the constitutional rights of the Plaintiff.  As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights were violated (and foreseeably so).

90.     This failure to supervise, train, discipline, or control its deputies demonstrates deliberate indifference to the constitutional rights of the Plaintiff and is directly responsible for the individual Defendants acting the way they did as outlined in this lawsuit.

91.     Further the de facto unwritten policy, procedure, or custom, described herein, demonstrates deliberate indifference to the constitutional rights of the Plaintiff and is directly responsible for the individual Defendants acting the way they did as outlined in this complaint.

92.     Defendant Sheriff's and Defendant County's supervision of the Defendant Deputies was deficient as it relates to subjecting pretrial detainees to excessive force, unlawful arrest, denial of due process, denial of equal protection of the law, and denial of medical treatment. Defendant Sheriff and Defendant County made a deliberately indifferent choice to not provide adequate supervision of these deputies to ensure that such actions are not repeated, and that is exactly why these Defendant Deputies were enabled and in fact emboldened to violate the Plaintiff's Constitutional rights as outlined herein.

93.    As a proximate result of the unconstitutional acts and omissions of Defendant Sheriff and Defendant County, Plaintiff was harmed and suffered damages, including physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

### COUNT VI
### Declaratory Relief

94.    Plaintiff realleges the material facts alleged in the preceding paragraphs against Defendants.  Defendants deprived Plaintiff, a pretrial detainee in Defendants' care, of his federal constitutional right to be free from unlawful arrest, excessive force, and deliberate indifference to medical treatment.  Defendants' egregious conduct against Plaintiff, and other pretrial detainees, is a rampant problem plaguing Defendant Sheriff and Defendant County.  This continued conduct is causing irreparable harm.  Through continued application and enforcement of their policies, practices, and custom, written or unwritten, that seek to assault pretrial detainees, including Plaintiff, for no lawful purpose or practice, and then decline to provide medical care, Defendants threaten further violations of these same rights.  Plaintiff is thus entitled to a declaration pursuant to 28 U.S.C. §2201 that his rights arising under the Constitution have been violated by the actions of the Defendants and their policies, practices, and custom, written or unwritten, for no lawful purpose or practice—are facially unconstitutional and unconstitutional as applied to Plaintiff.

### COUNT VII
### Injunctive Relief

95.    Plaintiff realleges the material facts alleged in the preceding paragraphs against Defendants.  Plaintiff and other pretrial detainees, have and will continue to be deprived of federal constitutional rights protected under the Fourth and Fourteenth Amendments while detained and under the control of Defendant Sheriff and Defendant County, causing Plaintiff irreparable harm and threatening additional, immediately impending irreparable injuries.  Defendants, in an ongoing

manner, violate the Constitutional rights of Plaintiff and other pretrial detainees through excessive force, unlawful detention, and a failure to provide medical treatment.   This harm to Plaintiff, and others similarly situated, is in violation of 42 U.S.C. § 1983.

96.    Plaintiff is thus entitled to an injunction preventing Defendants from further enforcement of their policies, practices, and custom, written or unwritten, that seeks to violate constitutional rights of pretrial detainees with excessive force, unlawful arrest, and declination of necessary medical treatment, for no lawful or other legitimate purpose or practice.

## ATTORNEY'S FEES AND COSTS

94.    It was necessary for Plaintiff to hire the undersigned attorney to file this lawsuit. Plaintiff seeks the recovery of attorneys' fees incurred in the pursuit of this action pursuant to 42 U.S.C. §1988(b) and expert fees pursuant to 42 U.S.C. § 1988(c).  Plaintiff also seeks recovery of his expenses and costs of court pursuant to 28 U.S.C. § 1920.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment and prays for the following relief against Defendants:

a.    A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that subject pretrial detainees in Defendants' care to excessive force, unlawful arrest, and deliberate indifference to medical treatment violate the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

b.    Injunctive relief barring Defendants' continued conduct and from maintaining their policies, practices, and custom of subjecting pretrial detainees in Defendants' care to excessive force, unlawful arrest, and deliberate indifference to medical treatment which is in violation of the Fourth and Fourteenth Amendments, as well as 42 U.S.C. § 1983.

c.    Full and fair compensatory damages in an amount to be determined by a jury.

d.    Punitive damages from one or more Defendants to be determined by a jury.

e.    Pre-judgment and post-judgment interest from one or more Defendants.

f.    Reasonable attorney's fees and costs of this action; and

g.    Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to FED. R. CIV. P. 38(b).

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
**COUNSEL FOR PLAINTIFF**